UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Erika V. Becker,                                 Case No. 23-25123-beh

                    Debtor.                         Chapter 7

    Lisa Goldman,

                    Plaintiff,

v.                                            Adv. No. 24-02007-beh

    Erika V. Becker,

                    Defendant.

**DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      The plaintiff, Lisa Goldman, moved for summary judgment seeking to avoid discharge of her claim under 11 U.S.C. § 523(a)(6). Years earlier, a federal jury awarded a civil judgment against the defendant, Erika Becker, in favor of non-party Doniel Carter, who subsequently conveyed his interest in the award to Goldman. Becker since has filed for Chapter 7 bankruptcy relief. Goldman asserts Carter's judgment stemmed from "willful and malicious injury," and therefore should be nondischargeable. The undisputed facts Goldman proffers are based principally on the trial jury's verdict, which she contends are preclusive. For the reasons set forth below, the Court finds there to be a genuine dispute of material fact as to whether Becker acted willfully within the meaning of § 523(a)(6) and will deny the plaintiff's motion.

**JURISDICTION**

      The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984 order of reference entered under 28 U.S.C. 157(a). Determining whether a debt is dischargeable is a core proceeding under 28 U.S.C. § 157(b)(2)(I), for which the Court may enter final orders and judgments. 28 U.S.C. § 157(b)(1).

## BACKGROUND

The following facts are generally undisputed unless otherwise stated.

Erika Becker was a sergeant correctional officer at the Fox Lake Correctional Institution in early 2012. ECF No. 1, at 2; ECF No. 7, at 1. Doniel Carter, then an inmate at Fox Lake, interacted with Becker in Unit 10 of the prison where he was assigned to live, and she was assigned to work. ECF No. 1, at 3; ECF No. 7, at 2. Fox Lake, like other Wisconsin prisons, has a fraternization policy forbidding certain personal contact and relationships between staff and inmates. ECF No. 1, at 2; ECF No. 7, at 2. Conduct falling under the umbrella of fraternization by both staff and inmates is prohibited, with consequences for inmates including a conduct report, loss of privileges, placement in segregation, or transfer to another correctional institution. ECF No. 24-4, at 7–8 (17:22-19:16). The parties presently dispute the scope of Carter and Becker's interaction in Unit 10 and whether fraternization occurred as defined by prison policy. The undisputed record reflects, at the very least, that the two interacted in some capacity during the relevant time.

In May 2012, Fox Lake staff discovered an unaddressed note in Becker's backpack describing her attraction to Carter. ECF No. 24-5, at 6; ECF No. 24-4, at 12 (37:7–22). Becker was placed on administrative leave pending an investigation into the note, but chose to resign the same day. *See* ECF No. 24-2, at 5 & 14 (17:17–18:25 & 53:17–54:1); ECF No. 24-1, at 124–25 (92:12–93:6); ECF No. 24-4, at 14 (43:14–45:5). Carter was transferred to a different prison in Waupun and placed in segregation pending the investigation. ECF No. 24-4, at 36 (133:9–18). Carter ultimately was released from prison in November 2013. ECF No. 24-2, at 18 (72:20–23).

Years later, Carter filed a 42 U.S.C. § 1983 claim against the Wisconsin Department of Corrections, Becker, and other DOC staff.[1] His complaint, as amended, alleged that Becker (then "Erika Watson") violated his Fourth, Eighth, and Fourteenth Amendment rights by subjecting him to cruel and

---

[1] *Carter v. Watson et al*, No. 18-cv-0727 (E.D. Wis. May 9, 2018).

unusual punishment. ECF No. 24-6, at 2. He claimed that Becker demanded he perform degrading and nonconsensual sexual acts at Fox Lake (which Becker denies) and that the subsequent investigation into Becker's note caused him to be isolated from the general prison population, transferred to a less desirable prison, and stripped of ordinary prison comforts. *Id.* at 6, 11–12. Most importantly, claims Carter, during his time in segregation he missed a sentence modification hearing at which he expected to obtain an early release; when he later appeared at a rescheduled hearing he was wearing a red jumpsuit, signifying he was a "problem inmate" and, he says, this resulted in him serving another year in prison. *Id.* at 12; ECF No. 1, at 4–5.

Following a four-day trial, the district court instructed the jury that they should find Becker had violated Carter's Eighth Amendment rights if she had been "deliberately indifferent" to his health and safety while he was incarcerated at Fox Lake. ECF No. 24-7, at 7. The jury was told that "the term 'deliberate indifference' means that [Becker] actually knew of a substantial risk of harm and that she consciously disregarded this risk through her actions." *Id.* The jury was instructed that an award of punitive damages was permitted if the jury found that Becker's conduct was malicious (meaning that it was "accompanied by ill will or spite, or [] done for the purpose of injuring" Carter) *or* if her conduct was in reckless disregard of Carter's rights (meaning that "under the circumstances, [Becker] simply did not care about his safety or rights"). *Id.* at 9.

After deliberating, the jury concluded that Becker had shown deliberate indifference to Carter's health and safety. ECF No. 1-1. It awarded Carter nothing in compensatory damages and $125,000 in punitive damages. *Id.* The district court later added $141,292.38 in attorney's fees, for a final judgment of $266,292.38. ECF No. 1-3, at 20. Carter subsequently conveyed his interest in the judgment to Lisa Goldman, his legal counsel in the civil suit. ECF No. 1-6. Becker since has filed for bankruptcy relief, and Goldman initiated this adversary proceeding to have the judgment claim deemed nondischargeable.

## SUMMARY JUDGMENT

On motion, the Court shall grant summary judgment on each claim or defense, or part of each claim or defense, if the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material fact" is one which "might affect the outcome of the suit" under the applicable law. *Id.* A party asserting, or denying, that a fact is genuinely disputed must "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## PARTIES' ARGUMENTS

Goldman asserts that her claim stemming from Carter's civil judgment is nondischargeable under 11 U.S.C. § 523(a)(6) as a debt arising from "willful and malicious injury." The parties tell starkly different stories of the underlying incident in their pleadings, but Goldman argues that the Court can decide this matter on summary judgment. She claims that the district court jury made factual findings when rendering its verdict and those findings are preclusive here under the doctrines of issue preclusion (collateral estoppel) and claim preclusion (res judicata). Although the jury was not asked specifically to find "willful and malicious injury," Goldman argues that the jury's findings of deliberate indifference with a punitive enhancement necessarily required that the jury find willfulness and maliciousness with a sufficiently culpable mental state to meet the § 523(a)(6) standard.

As Goldman argues, a willful injury for § 523(a)(6) purposes is one in which "the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (internal citations removed). The jury instructions included a sentence clarifying that "deliberate indifference" means

"actual knowledge of a substantial risk of harm and conscious disregard for that risk." The jury's finding of "deliberate indifference," therefore, necessarily included a finding of substantial risk of harm, actual knowledge of that risk, and conscious disregard for that risk. ECF No. 24-7, at 7. Goldman concludes, then, that the jury's findings satisfy the "substantially certain to result in injury" half of the quoted description in *Horsfall*.

Goldman also argues that the jury's award of punitive damages shows the injury was malicious. To award punitive damages, the jury needed to find that Becker's conduct was "malicious or in reckless disregard" of Carter's rights. ECF No. 24-7, at 9. As described to the jury, "[c]onduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring [Carter]." *Id.* "Conduct is in reckless disregard of [Carter's] rights if, under the circumstances, [Becker] simply did not care about [Carter's] safety or rights." *Id.* Goldman contends, therefore, that the jury's findings preclusively establish that Becker acted either with ill will or spite, or with actual purpose to injure, or without care for Carter's safety or rights. Combined with the earlier finding of actual knowledge of a substantial risk of harm, Goldman reasons that these findings equate to a finding of "conscious disregard for [Becker's] duties or without just cause or excuse." *Horsfall*, 734 F.3d at 774.

Becker objects to summary judgment by claiming that the elements of willfulness and maliciousness are genuinely disputed. In disputing willfulness, she contends that she was—at most—indifferent to Carter's rights, not deliberately indifferent or with a mental state of conscious disregard. ECF No. 7, ¶¶ 40–42; ECF No. 26, at 6. Further, she did not have actual knowledge of the risk her behavior posed to Carter because it was risky to her as well. ECF No. 26, at 6. As for maliciousness, Becker maintains that she did not feel ill-will or spite toward Carter—and that, if anything, her infatuation at the time with Carter shows the opposite. ECF No. 7, ¶¶ 40-42. On that basis, she argues that this debt should be dischargeable in her underlying Chapter 7 bankruptcy case.

# DISCUSSION

Debt arising from "willful and malicious injury" is exempt from discharge in bankruptcy. 11 U.S.C. § 523(a)(6). The plaintiff bears the burden to establish the elements of nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 285 (1991). Here, Goldman argues that the § 523(a)(6) elements—willful, malicious, and injury—are satisfied by undisputed facts on the record and that her claim therefore should be nondischargeable.

Under the doctrine of issue preclusion (also known as collateral estoppel), the Court must take as conclusive any issue which has been "actually and necessarily decided" by a court of competent jurisdiction. *Montana v. United States*, 440 U.S. 147, 153 (1979). Parties cannot take a second bite at the apple by relitigating facts and legal questions already considered by a previous court, including jury decisions. But unlike a judge's reasoned decision, jury findings may need to be inferred through context taken from the trial record. In reconstructing a jury's decision, the court may look to the jury instructions, the special verdict, and the trial transcripts. *See* 18 Wright & Miller, Fed. Prac. & Proc. § 4420.[2]

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021). The elements of federal issue preclusion are:

> (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been

---

[2] "[T]he simple fact of victory or defeat of a plaintiff or defendant establishes decision of all the issues that would have had to be resolved to support the result. In other cases the inference may result from a tortured reconstruction of the probable decision process. A decision reached by a judge may be reconstructed by examining the law to determine whether some of the possible determinations would have been supported on a proper view of the law. Jury decisions may be reconstructed by considering such indicia as the amount of the award and the reasonableness of various interpretations of the evidence, on the explicit assumption that the jury understood and adhered to the court's instructions on the law." 18 Wright & Miller, Fed. Prac. & Proc. § 4420.

essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action.

*In re Spielman*, 588 B.R. 198, 205 (Bankr. N.D. Ill. 2018) (citations omitted). The final element, full representation, refers to the party's "full and fair opportunity to litigate the issues in that suit," not whether he or she had appeared or retained counsel. *Id.* (citing *Dexia Credit Local v. Rogan*, 629 F.3d 612, 629 (7th Cir. 2010)).

The Court cannot give preclusive effect to what a previous jury *might* have decided; only facts which the jury, as instructed, *must* have found to reach its verdict are binding. *American Trust & Sav. Bank v. Philadelphia Indem. Ins. Co.*, No. 09CV474WMC, 2010 WL 3743534, at *13 (W.D. Wis. Sept. 22, 2010) (citing *Jacobs v. Marathon County, Wis.*, 73 F.3d 164, 168 (7th Cir. 1996)). The previous findings must map onto each element of the relevant legal test. *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019). To be preclusive, the jury's findings must "substantially mirror" the elements of the claim at issue. *Horsfall*, 738 F.3d at 775.

1. **Injury**

Working in reverse order, the Court quickly can address the element of "injury." As pertains to § 523(a)(6), an injury need not be physical. Courts understand the term broadly to include any "violation of another's legal right, for which the law provides a remedy." *Horsfall*, 738 F.3d at 774; Black's Law Dictionary (12th Ed. 2024); *see also, e.g.*, *Heinrich v. Bagg (In re Bagg)*, 589 B.R. 650, 656, 658 (Bankr. E.D. Wis. 2018) (finding injury in judgments for tortious interference with contract and tortious unlawful harvesting of timber). Goldman's claim consists of a legal judgment for punitive damages and attorney's fees, but no compensatory damages which one might expect if the jury found physical or economic harm. Nevertheless, her judgment claim representing damages for the violation of Carter's Eighth Amendment rights—a harm "for which the law provides a remedy"—constitutes an "injury" under § 523(a)(6). *Compare* ECF No. 1-3, at 14 (trial court judge, resolving Becker's post-trial motions, and observing that the jury "could very easily have found

compensatory damages difficult to ascertain while still deciding that punitive damages were appropriate given the evidence of Becker's conduct").[3]

### 2. Malicious

An injury, or an action causing injury, is "malicious" under § 523(a)(6) if it is done "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Horsfall*, 734 F.3d at 774 (citing *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)). The Court may infer malice from context rather than require direct evidence of the debtor's mental state. *In re Townsend*, 550 B.R. 220, 227 (Bankr. E.D.N.Y. 2016). The debtor-defendant's knowledge and actions, rather than feelings or emotions, control whether the plaintiff's injury was malicious. *See, e.g., id.* (finding malice under a "reasonable person" standard for § 523(a)(6) nondischargeability from a previous jury verdict finding the debtor engaged in workplace sexual harassment).

Goldman argues that the jury's punitive damages award bears on § 523(a)(6) malice. Parsing the district court's instructions, the jury could have awarded punitive damages if it found either that Becker acted with actual intent to injure, or Becker acted with ill-will or spite, or Becker "simply did not care about [Carter's] safety or rights." ECF No. 24-7, at 9. These three options are disjunctive, so it is possible the jury awarded punitive damages by finding only that Becker did not care about Carter's rights, i.e., she was indifferent. As malice under *Horsfall* requires *conscious* disregard, not mere indifference, the jury's award of punitive damages by itself does not resolve this dispute of material fact.

Goldman is correct, however, that Carter's injury qualifies as "malicious" under the *Horsfall-Thirtyacre* definition. Becker denies that her actions were malicious because she lacked ill-will or intent to harm, but her subjective

---

[3] Notably, the jury verdict did not make any findings about the precise nature of the injury Carter suffered—e.g., enduring unwanted sexual advances, or being transferred and placed in segregation as a result of the discovery of Becker's letter—but the award of damages itself it is sufficient to establish that an injury within the meaning of § 523(a)(6) occurred.

motivation here is irrelevant: maliciousness "does not require ill-will or specific intent to do harm." *Horsfall*, 734 F.3d at 774. The jury found that she was "deliberately indifferent" to Carter's rights, a phrase that essentially mirrors the "conscious disregard of one's duties" description from *Horsfall*. In large part, a prison guard's duties and a prisoner's rights are two sides of the same coin in the Eighth Amendment context. Becker's attempt to distinguish indifference from disregard—that arguably one is more intentional than the other—is not compelling given that both words are modified by "conscious" and "deliberate" respectively. These words, at the very least, "substantially mirror" each other and constitute a jury finding of malice. *See Horsfall*, 738 F.3d at 775.

### 3. Willful

For an injury to be willful under § 523(a)(6), the Court must find that the debtor had an intentional mental state above that of negligence or recklessness. *Kawaauhau v. Geiger*, 523 U.S. 57, 59 (1998). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. There must be a showing of deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Id.* at 61; *Horsfall*, 738 F.3d at 774. In sum, a willful injury is one that the injurer inflicted "either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v. Larson*, 677 F.3d 320, 324 (7th Cir. 2012).

Goldman asserts, with some support from language in *Horsfall* and *Gerard v. Gerard*, 780 F.3d 806 (7th Cir. 2015), that willfulness under § 523(a)(6) is an objective standard. *See Horsfall*, 738 F.3d at 774 ("Willfulness can be found either if the debtor's motive was to inflict injury, or the debtor's act was substantially certain to result in injury.") (quoting *Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001)); *Gerard*, 780 F.3d at 811 ("We further explained [in *Horsfall*, quoting *Bukowski*] that willfulness is judged by an objective standard . . . ."). Understandably, these passages have led to some confusion. Both ultimately trace back to *Bukowski*—a case in which the district court applied the Supreme Court's decision in *Geiger* to determine that the

§ 523(a)(6) willfulness test is subjective. *See Bukowski*, 266 B.R. at 843–44. The *Bukowski* court surveyed a number of circuits that had applied *Geiger* and concluded that "a person acts willfully under § 523(a)(6) when he intends to injure or when he is substantially certain that his conduct will cause injury to the creditor"—in other words, a subjective test, requiring intent, knowledge, or belief that harm will result. *Id.* at 844.[4]

The *Gerard* court's description of the test for willfulness as objective is an example of the "pseudo-conflict" the Seventh Circuit previously described in *Jendusa-Nicolai*: "different legal definitions of the same statutory language that probably don't generate different outcomes." 677 F.3d at 322–23; *see also id.* at 323–24 (identifying redundancies—"deliberate and intentional," and "objective . . . certainty"—and ambiguities—"specific intent to do harm" vs. *Geiger*'s requirement of "intent to do harm"—in the tests formulated by other circuits, and questioning: "[I]s 'objective substantial certainty of harm' really intended to substitute for intent to harm, or is the point rather that if harm is certain we disbelieve that it was inflicted accidentally?").

---

[4] In *Bukowski,* the court considered whether willfulness under *Geiger* required a subjective intent to injure the creditor, or merely knowledge that injury was substantially certain to result from the debtor's acts. Looking at cases and secondary sources cited with approval in *Geiger*, the court concluded that a specific intent to injure is not necessary. Instead, knowingly undertaking a wrongful act that *necessarily* causes injury (battery, for example), or having subjective knowledge that injury is substantially certain to result, satisfies the willfulness requirement of § 523(a)(6). *See* 266 B.R. at 843–44. In other words, the debtor must either "desire the consequences of an act or [] know that the consequences are substantially certain to result." *Id. Bukowski* observed that "[t]his definition has been adopted by a number of circuit courts," first quoting a Ninth Circuit decision describing willfulness as being established where "the debtor had a subjective motive to inflict the injury *or* [] the debtor believed that injury was substantially certain to occur as a result of his conduct," then remarking that the Fifth and Sixth Circuits had adopted similar approaches. The Fifth Circuit case on which *Bukowski* relies is *Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598, 604 (5th Cir. 1998), which concluded that *Geiger* is satisfied where "the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." *Bukowski* describes this approach to mean that "an injury is 'willful' under § 523(a)(6) if the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury"—an objective test. Unfortunately, it is this descriptive language that the Seventh Circuit later quotes in *Horsfall* and *Gerard*, rather than *Bukowski's* ultimate conclusion expressly imposing a subjective test (i.e., that the debtor must intend to injure, or be substantially certain that his conduct will cause injury to, the creditor). The Seventh Circuit's reference to the ambiguous language above appears to have created the current uncertainty over the law in our circuit.

At most, *Gerard's* classification of the test for willfulness as being "objective" can be understood to mean that evidence of a subjective intent to injure is not required to prove willfulness—instead, evidence showing that a debtor's actions were objectively certain to cause harm may support a finding that the debtor intended to cause the injury. Even in circuits where the standard for willfulness is formulated with an objective prong (like the Fifth), the choice to frame the inquiry as objective versus subjective tends to make little substantive difference. *Compare In re Vollbracht*, 276 F. App'x 360, 362 (5th Cir. 2007) (debtor acted willfully by intentionally punching a creditor multiple times in the face; in doing so, the debtor "obviously intended some harm," and even if he did not have a subjective intent to harm, his "intentional punches were [] objectively, substantially certain to cause harm"); *In re Red*, 96 Fed. App'x 229, 231 (5th Cir. 2005) (debtor acknowledged that his conduct in intentionally driving into a crowded bar during happy hour would inevitably cause catastrophic injuries or death, and, even if he did not subjectively intend to cause harm, his actions created an objective substantial certainty of injury sufficient to establish willfulness) (contrasting *In re Delaney*, 97 F.3d 800 (5th Cir. 1996) (debtor did not act willfully when he accidentally fired a gun while tapping the gun on the windshield of a creditor's car; although the debtor acted intentionally in loading the gun, taking it to a confrontation with the creditor, and twice tapping the barrel of the gun on the car windshield while his finger was on the trigger, he neither intended to injure the creditor nor intentionally took action that was substantially certain to cause the injuries the creditor suffered)).

As the above cases confirm, "regardless of whether th[e] concept [of intent to injure] is considered part of proving 'willfulness' or proving 'maliciousness,' . . . a creditor invoking section 523(a)(6) must prove an intent to inflict injury." *In re Bagg*, 589 B.R. at 655–56 (citing, *inter alia*, *Jendusa-Nicolai*, 677 F.3d at 322–24 (irrespective of definitions, the debtor's conduct in beating his pregnant ex-wife with a baseball bat, sealing her in a garbage can filled with snow, and leaving her in an unheated storage facility supported a

finding of willful and malicious injury; "[the debtor] obviously intended to injure [his ex-wife]—he was convicted of attempted murder, after all"); *Horsfall*, 738 F.3d at 775 (state court verdict for tortious interference under Wisconsin law was not preclusive as to the element of willfulness because the state-law claim required only an intent to act, not an intent to injure); *Gerard*, 780 F.3d at 809–11 ("*Horsfall* teaches that one must act with the specific intent to cause a certain result in order to prove willfulness"; a state court jury verdict establishing that (1) the debtor "kn[e]w, or should [] have known" that the contents of a lien filing "were false, a sham, or frivolous," and (2) the debtor did not have a reasonable ground for believing the truth of all the contents of the filing, were not preclusive as to the element of willfulness, because the verdict could have been based on negligent conduct) (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (reversing preclusive effect of libel judgment because it was imposed based on debtor's "knowledge of [a statement's] falsity *or* [] reckless disregard of whether [the statement] was false" when the latter conduct did not rise to the level of "willful and malicious injury")).

Formal semantics aside, "[a] creditor invoking section 523(a)(6) must show that the debt at issue arises from an injury to the creditor's person or property, intentionally caused by the debtor, with some level of malice, wickedness, or a specific intent to inflict injury." *Bagg*, 589 B.R. at 656; *see also Jendusa-Nicolai*, 677 F.3d at 322 (an injury is willful only if intended; "if it's the result but not the *intended* result of an intentional act, the debt arising from the injury is dischargeable," even if the injury was the result of a reckless act); *Heinrich v. Bagg*, No. 18-CV-1308-PP, 2023 WL 2633738, at *15–17 (E.D. Wis. Mar. 24, 2023) (willfulness requires an intent to injure, or a belief that it is substantially certain the creditor will suffer harm); *contra Heyerholm v. Johnson*, No. 23-CV-328-JDP, 2024 WL 4240288, at *5 (W.D. Wis. Sept. 19, 2024) (conduct is willful "if injury is substantially certain, regardless of

whether the debtor is aware of the risk" and even if the debtor "does not know or believe that injury is likely").[5]

---

[5] The Court respectfully disagrees with *Heyerholm*, which was issued after briefing in this matter, for several reasons. First, *Heyerholm* reads *Horsfall*'s statement that conduct is willful "either if the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury" to mean that the Seventh Circuit "held" that "'deliberate or intentional' [does] *not* mean subjective awareness"—a departure from the consensus view of most other circuits, which have adopted a subjective approach. 2024 WL 4240288, at *2. It is fair to question why the Seventh Circuit would adopt a circuit-splitting test without a single word of explanation if it intended that proposition to be a holding rather than dicta— particularly after having earlier described the purported circuit split as a "pseudo-conflict," based on linguistic differences that don't appear to be outcome-determinative. *Jendusa-Nicolai*, 677 F.3d at 322–23. Moreover, as previously noted, the underlying facts of *Horsfall*— intentional tort jury findings—made the precise test used irrelevant; the findings would not be preclusive under either standard because the jury findings could show only intent to act, not (subjective or objective) intent to injure. *See Horsfall*, 738 F.3d at 775. The Seventh Circuit has explained that its dicta is nonbinding because it lacks both the "judges' most careful, focused thinking" and the necessity of being "integral elements of the analysis underlying the decision." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).

Second, the *Heyerholm* court's reliance on *Gerard*'s strong language as prescribing an objective standard is undermined by *Gerard*'s own inconsistency, suggesting it too is dicta. *Gerard*'s reminder that "one must act with the specific intent to cause a certain result in order to prove willfulness" is puzzling if that court truly was using an objective "reasonable person" standard. *Gerard*, 780 F.3d 806, 811 (citing *Horsfall*, 738 F.3d at 774). Describing *Gerard*'s test as objective is all the more confusing in light of the Seventh Circuit's ultimate conclusion in that case: a state court verdict for slander of title did not establish willfulness because the jury could have based its decision on negligent conduct (what the debtor "should have known"). *Id*. The *Gerard* court's applied reasoning, notwithstanding its earlier statement, appears to follow a subjective approach—focusing on what the debtor actually knew, instead of what he should have known.

Third, the subjective test resolves another lurking dicta-inspired mistake in applying § 523(a)(6)—the finding of malice even in cases where there is "no ill-will or specific intent to do harm." *In re Thirtyacre*, 36 F.3d at 700. As described more eloquently by others, *see Bagg*, 589 B.R.at 656 n.4, the finding of "willful and malicious injury" without any ill-intent seems to defy logic. By requiring a subjective element of knowledge to find willfulness, the test avoids "transforming every state-law intentional tort into a non-dischargeable debt, contrary to the Supreme Court's opinion in *Geiger*." *Horsfall*, 738 F.3d at 775.

Finally, the objective test—at least as recited in *Heyerholm*, which would find "willful" conduct even when a debtor honestly fails to appreciate that her actions are substantially certain to cause harm—simply cannot be squared with the language in *Geiger*. As the Seventh Circuit has pointed out, the definition of willfulness "must incorporate *Geiger*'s admonishment that the requisite intent for purposes of § 523(a)(6) is the intent to injure rather than the intent to act." *Horsfall*, 738 F.3d at 774–75. The Supreme Court's holding that "recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)" cannot be read to permit a should-have-known standard because such a standard is one of negligence or recklessness. *Geiger*, 523 U.S. at 64. Both this Court and the *Heyerholm* court are bound by the Seventh Circuit, and the Seventh Circuit is bound by the Supreme Court. Given the doubt described above as to the binding status of certain phrases from *Horsfall* and *Gerard*, it is reasonable to construe them as intending to apply, rather than defy, the Supreme Court's decision in *Geiger*.

Recall that the jury found Becker liable on Carter's claim of deliberate indifference. The required mental state for deliberate indifference has a component of subjective intent: the defendant must actually know of a substantial risk of harm and consciously disregard that risk. *See* ECF No. 26, at 7; *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), *as amended* (Aug. 25, 2016) ("To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind. . . . [A] plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm."); *Farmer v. Brennan*, 511 U.S. 825, 836–40 (1994) (contrasting "civil-law recklessness"—a standard that imposes liability on a person who acts "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—with "criminal law" recklessness—which imposes liability "only when a person disregards a risk of harm of which he is aware"—and adopting the latter as the test for "deliberate indifference" under the Eighth Amendment). But subjective knowledge and disregard of a known risk—i.e., criminal recklessness—does not equate to subjective intent to harm, or knowledge of substantial certainty of harm. *See Haley v. Gross*, 86 F.3d 630, 641–42 (7th Cir. 1996) ("[A] prisoner claiming deliberate indifference need not prove that the prison officials intended, hoped for, or desired the harm that transpired. The standard for deliberate indifference 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("deliberate indifference" for purposes of an Eighth Amendment violation "is simply a synonym for intentional or reckless conduct").

Consequently, an Eight Amendment violation, standing alone, does not meet the high bar required to show a willful injury. *Geiger,* 523 U.S. at 64 ("debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."); *Horsfall*, 738 F.3d at 774 (a willful injury requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury"); *see also In re Su*, 290 F.3d 1140, 1145–46 (9th Cir. 2002) (rejecting an objective standard of willfulness because such a standard

"disregards the particular debtor's state of mind and considers whether an objective, reasonable person would have known that the actions in question were substantially certain to injure the creditor," which resembles too closely the "reckless disregard" standard used in negligence, and thus covers behavior not encompassed by § 523(a)(6)). Because willfulness under § 523(a)(6) requires intent *to injure*, and the jury's findings show only intent to act while knowing of a substantial risk—essentially recklessness—the jury verdict is insufficient to prove that Becker had "subjective knowledge" that her actions were "substantially certain" to injure Carter. *Bukowski*, 266 B.R. at 843.

The result would be the same whether the Court relied on a subjective test, or an objective one (as Goldman urges). The only actions to which Becker admits—writing a letter to Carter and leaving it in her backpack[6]—were not "substantially certain" to injure Carter. Nothing in the record establishes that Becker had reason to believe that prison officials would search her backpack and discover the letter and, had they not done so, it is possible that Carter would not have been transferred to another prison and subjected to the adverse conditions of which he complains. *Compare Bagg*, 589 B.R. at 658 (describing three possible outcomes from the debtors' actions, only one of which would have resulted in a wrongful injury to the creditor, meaning that injury was not substantially certain to occur).

Nowhere in the jury's verdict or instructions, or in the extended record, can the Court find preclusive evidence showing Becker actually knew that her actions were substantially certain to injure Carter. She may have, and this topic may be explored at trial, but Goldman has not met her burden to show that the element of willfulness is genuinely undisputed.

---

[6] To the extent that Carter asserts he was injured by Becker's alleged sexual harassment, the underlying facts are disputed and cannot be considered true for purposes of summary judgment. Nevertheless, other courts have found that similar conduct, by itself, does not establish a "willful" injury as a matter of law. *See, e.g.*, *Sanger v. Busch (In re Busch)*, 311 B.R. 657, 670 (Bankr. N.D.N.Y. 2004) (creditor failed to show that a debtor who permitted a hostile work environment and made sexual advances acted with the requisite intent to harm; the creditor admitted that the debtor acted with the specific intent to advance his own prurient interests at the expense of her right to be free from sexual attack and harassment, which is not the same as intending to harm her).

## CONCLUSION

Goldman argues that speculation alone cannot overcome summary judgment. True enough, but the plaintiff as movant must show that facts supporting each element of the claim are not genuinely disputed. On review of the jury verdict, there is a genuine dispute of material fact as to whether Becker intended to, or knew that her actions were substantially certain to, injure Carter. Goldman is not limited to just the jury verdict. In this case, however, the remaining undisputed record does not get her across the finish line. On the alleged injuries in the nature of "sexual touching," "degrading acts," and "adverse treatment," Becker denies these accusations and the jury's verdict did not explicitly find that they occurred. As for the theory of injury involving Carter's subsequent prison transfer, solitary confinement, loss of privileges, red clothing, missed hearing, etc., it is (at most) undisputed that Becker knew both she and Carter would face consequences *if caught*. Becker's own contemporaneous punishment and denial statements are sufficient to dispute, for purpose of this motion, that she intended harm or was substantially certain that she would be caught and consequences would follow.

Because there is a genuine dispute of material fact as to whether Becker acted willfully within the meaning of 11 U.S.C. § 523(a)(6), the plaintiff's motion for summary judgment must be denied.

The Court will issue a separate order consistent with this decision, and set a status hearing to schedule further proceedings.

Dated: January 22, 2025

By the Court:

Beth E. Hanan
United States Bankruptcy Judge